UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ISIS GONZALEZ RODRIGUEZ,

        Plaintiff,

v.                                    Case No.  8:20-cv-1232-WFJ-SPF

KILOLO KIJAKAZI,[1]
Acting Commissioner of the
Social Security Administration,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits ("DIB").  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, it is recommended that the Commissioner's decision be affirmed.

**I.**

### A.    Procedural Background

Plaintiff filed an application for a period of disability and DIB (Tr. 71).  The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 71).  Plaintiff then requested an administrative hearing (Tr. 249-250).  Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 120-153).  Following

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021 and is substituted as Defendant in this suit pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 68-84).   Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1). Plaintiff then timely filed a complaint with this Court (Doc. 1).   The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

**B.     Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1978, claimed disability beginning January 5, 2017 (Tr. 309).   Plaintiff obtained at least a high school education (Tr. 83).   Plaintiff's past relevant work experience included teacher aide, family counselor, housekeeper cleaner, warehouse worker, and corrections officer (Tr. 82-83).   Plaintiff alleged disability due to depression, anxiety, immune system disease, Hashimoto's thyroiditis, back condition (spondylosis and sclerosis), migraine complex, mini stroke, asthma, neuropathic pain (fibromyalgia) mutation factor 2 and 3, and adrenal deficiency (Tr. 76, 343).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through March 31, 2022 and had not engaged in substantial gainful activity since January 5, 2017, the alleged onset date (Tr. 73).   After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: degenerative joint disease – bilateral knees; degenerative disc disease – lumbar; asthma; thyroid disorder; obesity; anxiety disorder; and major depressive disorder (Tr. 73).   Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1 (Tr. 74).  The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except can no more than occasionally stoop, kneel, crouch, crawl, and balance; can no more than occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; should not work around heavy respiratory irritants or hazards, such as open moving machinery or unprotected heights; can understand, remember, and carry out simple instructions; can maintain persistence for simple tasks; should not work with the general public; should not be required to interact with co-workers and supervisors on more than an occasional basis, and these interactions should be superficial and work-related (Tr. 75-76).  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 80).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform her past relevant work (Tr. 82-83).  Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a lens inserter, stone setter, and weight tester (Tr. 84, 148).  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 83-84).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §

404.1520(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  See 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## III.

Plaintiff argues here that: (1) the ALJ erred in failing to include in the RFC assessment limitations due to moderate difficulties with adapting or managing oneself; (2) the ALJ erred in failing to discharge his duty to resolve the inconsistencies between the VE testimony and the DOT; (3) the ALJ's step five conclusion with regards to jobs available in the national economy was not supported by substantial evidence; and (4) the ALJ failed to properly consider Plaintiff's migraines and assess the limitation due to this impairment.  For the reasons that follow, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

### A.    Whether the ALJ erred in failing to include in the RFC assessment limitations due to moderate difficulties with adapting or managing oneself

Here, the ALJ found that Plaintiff has moderate limitations in adapting or managing oneself (Tr. 75).  Plaintiff, citing to the record at Tr. 75-76 and 146-47, argues that the ALJ erred in not including these limitations in the RFC assessment or hypothetical questions to the VE or otherwise accounting for them implicitly.  The Commissioner contends, on the other hand, that the ALJ included mental limitations in Plaintiff's RFC, which adequately accounted for her moderate limitations in adapting and managing oneself.

Adapting or managing oneself "refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting." 20 C.F.R. § 404, subpt. P, app. 1, 12.00(E)(4).  Examples in this area include "[r]esponding to demands," "adapting to changes," "distinguishing between acceptable and unacceptable work performance," "setting realistic goals," and "maintaining personal hygiene and attire appropriate to a

work setting." *Id*. The ALJ's RFC and hypothetical to the VE included the following mental limitations: can understand, remember, and carry out simple instructions; can maintain persistence for simple tasks; should not work with the general public; and no more than occasional interaction with coworkers and supervisors with such interaction being superficial and work related (Tr. 75-76, 146-47).

Plaintiff asserts that the ALJ's hypothetical question to the VE was silent with regards to Plaintiff's ability to regulate behavior, set realistic goals, maintain appropriate hygiene, or adapting to changes. Plaintiff also argues that none of the limitations in the ALJ's RFC assessment even implicitly account for this area. Plaintiff cites to *Winschel v. Commissioner of Social Security*, 631 F.3d 1176 (11th Cir. 2011), for the proposition that where it has not been otherwise adequately accounted for in some way, a claimant's moderate limitation as to concentration, persistence, or pace must be explicitly included in the hypothetical question posed to a VE. *Id.* at 1181.

The Commissioner maintains that courts have determined that limitations like the mental restrictions the ALJ found in this case adequately account for moderate limitations in adapting and managing oneself. *See, e.g., Stancavage v. Saul*, 469 F. Supp. 3d 311, 340-41 (M.D. Pa. 2020) (finding that an ALJ accounted for claimant's moderate limitations in adapting and managing oneself by limiting her to unskilled work that did not involve detailed instructions; to routine, repetitive tasks with no assembly line production; and to no more than occasional contact with the public and coworkers); *Nelson v. Saul*, No. 4:18-cv-163-D, 2019 WL 4748028, at *6 (E.D.N.C. Aug. 29, 2019) (finding that an ALJ adequately accounted for claimant's moderate difficulty in adapting or managing herself

by including in her RFC the limitations of occasional changes in the work setting, no interaction with the public, and occasional interaction with coworkers); *Rayonda P. v. Comm'r, Soc. Sec. Admin.*, No. 7:18-cv-190, 2019 WL 3242069, at *5 (W.D. Va. July 18, 2019) (finding an RFC limiting claimant to "only occasional changes in the work-setting" and "only frequent responses to the public and coworkers" adequately accounted for claimant's moderate limitations in adapting and managing oneself).   Moreover, courts have found that limiting a claimant to simple, routine tasks with limitations on interaction with coworkers and the public adequately accounted for the claimant's *marked* limitations in adapting and managing oneself.   *See Stevens v. Comm'r of Soc. Sec.*, No. 1:18-cv-1082-JLT, 2020 WL 1324497, at *10-11 (E.D. Cal. Mar. 20, 2020); *Hill v. Comm'r of Soc. Sec.*, No. 18-cv-1161, 2020 WL 836386, at *4 (W.D.N.Y. Feb. 20, 2020) (finding limitations to simple, routine, repetitive tasks, simple work-related decisions, and only occasional interaction with coworkers and the public adequately accommodated *marked* limitations in adapting and managing oneself).[2]   Plaintiff cites no authority to the contrary.

Here, the mental limitations included by the ALJ in the RFC and the hypothetical—can understand, remember, and carry out simple instructions; can maintain persistence for simple tasks; should not work with the general public; and no more than occasional interaction with coworkers and supervisors with such interaction being superficial and work related (Tr. 75-76, 146-47)—adequately account for Plaintiff's

---

[2] The Commissioner points out that the case law on this issue is just now developing because the agency adopted this functional area for evaluating mental disorders effective January 17, 2017 (Doc. 24 at 16).   *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138-01, 2016 WL 534172 (Sept. 26, 2016).

moderate limitations in adapting and managing oneself.  *See Stancavage*, 469 F. Supp. 3d at 340-41; *Nelson*, 2019 WL 4748028, at *6.  As such, the ALJ committed no error as to this issue, and remand is not warranted on this basis.

### B.   Whether the ALJ discharged his duty to resolve the inconsistencies between the VE testimony and the DOT

The ALJ found that Plaintiff could perform the job of weight tester, which has a GED Reasoning Level of 3 (Tr. 84; Doc. 24, Ex. C at 4).  Plaintiff argues that there was an apparent inconsistency between the VE's testimony and the Dictionary of Occupational Titles' ("DOT")[3] findings regarding Plaintiff's limitation to "simple tasks" and jobs with reasoning level of 3, which, per the DOT, require a claimant to "[d]eal with problems involving several concrete variables."  *See* DOT § 539.485-010, 1991 WL 674890 (weight tester, reasoning level 3).  Plaintiff contends that the ALJ, despite his affirmative obligation to do so, did not identify or resolve the inconsistency in his decision.

The Court agrees that an ALJ has an affirmative obligation to identify and resolve "apparent conflicts" between the VE testimony and the DOT, otherwise the ALJ's decision is not supported by substantial evidence.  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018); *see* Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704.[4]  This means it is not enough for the ALJ to simply ask the VE if there is an

---

[3] "The DOT is an extensive compendium of data about the various jobs that exist in the United States economy, and includes information about the nature of each type of job and what skills or abilities they require." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1357 n.2 (11th Cir. 2018).

[4] SSR 00-4p explains:

When vocational evidence provided by a VE or [vocational specialist ("VS")] is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that

apparent conflict; the ALJ must make a "meaningful investigatory effort" to identify or uncover any *apparent* conflicts, explain, and resolve them. *Washington*, 906 F.3d at 1364 (emphasis added). The court in *Washington* goes on to explain "apparent" means that conflict is "reasonably ascertainable or evident" and "seemingly real or true, but not necessarily so." *Id.* at 1366 (citing *Pearson v. Colvin*, 810 F.3d 204, 209 (4th Cir. 2015) (quoting *Oxford Dictionary*, http://www.oxforddictionaries.com/definition/apparent (last visited Dec. 1, 2015))).

The Court, however, need not address Plaintiff's claim that the ALJ did not appropriately address the inconsistency between the position of weight tester and Plaintiff's limitations because any error regarding the weight tester position is, at most, harmless.  The VE testified that Plaintiff could perform two other positions (lens inserter and stone setter), both of which have a GED Reasoning Level 1, and testified that there are more than 284,000 of these jobs combined in the national economy.  (Tr. 83-84, 148; *see* DOT § 713.687-026, 1991 WL 679273 (lens inserter, reasoning level 1); DOT § 735.687-034, 1991 WL 679985 (stone setter, reasoning level 1)); *see Wooten v. Comm'r of Soc. Sec.*, 787 F. App'x 671, 674 (11th Cir. 2019)[5] (per curiam) (declining to decide whether an apparent conflict exists between limitation to simple, routine, repetitive work and reasoning level 3 jobs because the ALJ found claimant could perform a reasoning level 1

---

the individual is or is not disabled.  The adjudicator will explain in the determination or decision how he or she resolved the conflict.  The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.
2000 WL 1898704, at *4.

[5] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

job, which claimant did not allege was inconsistent with her RFC); *Zeh v. Saul*, No. 8:18-cv-1608-T-SPF, 2019 WL 4233765, at *3-4 (M.D. Fla. Sept. 6, 2019) (finding no need to take up plaintiff's argument that the ALJ erred by not addressing whether a limitation to simple, routine, repetitive tasks was consistent with reasoning level 2 and 3 jobs because the VE also identified a reasoning level 1 job that plaintiff could perform) (citing *McLain v. Astrue*, No. 8:06-cv-2156-T-TBM, 2008 WL 616094, at *7 (M.D. Fla. Mar. 3, 2008) (when the VE's testimony includes at least one position Plaintiff can perform, an error in listing other positions is harmless and does not warrant overruling an ALJ's decision); *Zirnsak v. Colvin*, 777 F.3d 607, 618 (3d Cir. 2014) (holding that failure to inquire about or reconcile an apparent conflict does not warrant remand when no harm was done to the claimant)).  Moreover, Plaintiff has not alleged that the lens inserter and stone setter positions are inconsistent with her RFC.  As such, the ALJ properly relied on the VE's testimony in reaching his step-five finding that there was other work Plaintiff could perform (Tr. 83-84, 148).

## C.    Whether the ALJ's step five conclusion with regards to the jobs available in the national economy is supported by substantial evidence

Plaintiff asserts that the VE testimony concerning job numbers in the national economy was unreliable, and, therefore, the ALJ's conclusion that there are jobs in significant numbers in the national economy that Plaintiff could perform was not supported by substantial evidence.  Plaintiff's argument, however, fails because her assertion that the VE's testimony was unreliable is speculative and because Plaintiff failed to raise any discrepancies at the administrative hearing as to the number of jobs identified by the VE.

At step five, the Commissioner bears the burden of demonstrating that there are a significant number of jobs in the national economy that, given the claimant's impairments, the claimant can perform.  20 C.F.R. § 404.1560(c)(2); *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).  An ALJ may rely on the testimony of a VE at step five to determine whether the plaintiff can perform any work given her RFC and vocational factors.  20 C.F.R. §§ 404.1560(c)(2); 404.1566(e); *see also* SSR 00-4p, 2000 WL 1898704, at *2.  The ALJ may "take administrative notice of reliable job information available from various governmental and other publications[,]" including the DOT.  20 C.F.R. § 404.1566(d); *see also* SSR 00-4p, 2000 WL 1898704, at *2.  Finally, "a [VE's] testimony may count as substantial evidence even when unaccompanied by supporting data."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1155, 1157 (2019) (expressly rejecting claimant's request for the adoption of a categorical rule under which a VE's testimony would not constitute substantial evidence if he or she did not, even upon request, identify supporting data for the testimony and explaining that the "substantial evidence" inquiry "is case-by-case").  In other words, there is no requirement that a VE explain the methodology used to calculate job numbers, and the VE's testimony can constitute substantial evidence even if the VE provides no additional explanation or supporting data.

Here, Plaintiff relies entirely on *Goode v. Commissioner of Social Security*, 966 F.3d 1277 (11th Cir. 2020), which held that the VE did not provide substantial evidence to support the ALJ's decision.  In *Goode*, the Eleventh Circuit stated that the Social Security Administration "does not tally the number of job openings at a given time, but rather approximates the number of positions that exist, whether vacant or filled, and without

regard to the location of the work and a claimant's likelihood of being hired." *Id.* at 1280 (quoting *Chavez v. Berryhill*, 895 F.3d 962, 964 (7th Cir. 2018)). Moreover, "[t]he DOT groups jobs into 'occupations' based on their similarities and assigns each occupation a code number." *Id.* at 1281. The DOT codes, however, "do not provide statistical information about the number of jobs available in the national economy." *Id.* "Instead, the [VE] must look to other sources like the Occupational Employment Quarterly (OEQ), which is compiled by a private organization called U.S. Publishing, to find employment statistics." *Id.* However, the OEQ "does not compile data by DOT codes, but rather through the Standard Occupational Classification (SOC) system." *Id.* (citing Occupational Employment Statistics ("OES"), Bureau of Labor Statistics, https://www.bls.gov/oes). "The SOC system groups together detailed occupations with similar job duties. As a result, a single SOC group may contain multiple DOT occupations." *Id.* To assist with the two sources, "the Bureau of Labor Statistics has published a crosswalk which provides the corresponding SOC group code for each DOT occupation." *Id.*

The Eleventh Circuit in *Goode* held that a remand was required because the VE's testimony was "significantly and admittedly flawed," and the flawed testimony had been adopted by the ALJ. *Id.* at 1278, 1280. Specifically, the VE used the wrong SOC group code to determine whether there were a significant number of jobs in the national economy that the plaintiff could perform, and the numbers that the VE cited from the wrong SOC group code substantially overstated the number of available bakery worker jobs that the plaintiff could perform. *Id.* at 1281-84. The court also noted that that the

13

claimant challenged and questioned the VE's methodology and job numbers at the hearing during which the ALJ intervened and urged the attorney to move on.  *Id.* at 1284 n. 3 (citing *Shaibi v. Berryhill*, 883 F.3d 1102, 1110 (9th Cir. 2017) ("It is enough to raise the job-numbers issue in a general sense before the ALJ.  A claimant may do so by inquiring as to the evidentiary basis for a VE's estimated job numbers….")).

Here, there is no argument or indication that the VE calculated job numbers using data from the wrong SOC code related to a DOT occupation.  In fact, there was no testimony that the VE used data from SOC groups or any OES data at all.  As such, Plaintiff's argument that the VE's testimony—that there are 188,000 lens inserter and 96,000 stone setter jobs in the national economy—is out of proportion with the OES data is unavailing.  It relies on Plaintiff's speculation that the VE "*likely* relied on the numbers for broader group of jobs rather than the numbers for the individual DOT occupations of Lens Inserter and Stone Setter" (Doc. 24 at 25) (emphasis added).  To the contrary, the VE in this case said her testimony was based on her own work experience, the DOT, job analysis, and other publications (Tr. 151).[6]  Moreover, because there is no clear evidence from the hearing transcript that the VE relied on the SOC, Plaintiff's citation to OES data is extra-record evidence that should not be considered by the Court.  *See Biestek*, 139 S. Ct. at 1154 ("Under the substantial-evidence standard, a court looks to an existing administrative record…."); *Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009-10 (11th Cir. 2020) (per curiam) (holding that when a claimant does not present contradictory

---

[6] The hearing transcript indicates that after the VE said "other publications," she said something that was inaudible to the transcriber (Tr. 151).

occupational statistics before the ALJ or object to the VE's testimony, a court is "foreclosed from considering the data in the occupational employment statistics on appeal").

Finally, Plaintiff's counsel did not question the VE's methodology for calculating the jobs numbers or challenge the reliability of the VE's testimony during the hearing (Tr. 149-51).  *See Goode*, 966 F.3d at 1284 n. 3 (distinguishing claimant's case from ones in which a claimant did not challenge or question the VE about methodology or job numbers); *see also Webster v. Comm'r of Soc. Sec.*, 773 F. App'x 553, 555 (11th Cir. 2019) (per curiam) (rejecting the plaintiff's argument that the SOC job numbers reported demonstrated that the VE's testimony was unreliable, where the plaintiff did not question the VE's qualifications and did not pose questions to the VE during the administrative hearing that addressed the concerns set forth on appeal regarding reliability, and, therefore, finding that the VE's testimony, based on the VE's own experience of having completed supervisor surveys for the specific jobs identified, his knowledge of the industry, and the DOT, constituted substantial evidence);  *Pace v. Comm'r of Soc. Sec.*, 760 F. App'x 779, 781-82 (11th Cir. 2019) (per curiam) (finding that the VE's testimony constituted substantial evidence where the ALJ posed a hypothetical question to the VE that the plaintiff "did not object to" at the administrative hearing and where the VE based her calculation of the number of positions the plaintiff could perform on her experience, expertise, and onsite job analyses, to which the plaintiff likewise did not object at the administrative hearing);  *Teague v. Comm'r of Soc. Sec.*, 743 F. App'x 410, 412 (11th Cir. 2018) (per curiam) (finding that substantial evidence supported the ALJ's step-five finding

where the plaintiff failed to challenge the hypothetical question posed to the VE, failed to challenge the VE's testimony that the plaintiff could perform the identified jobs, offered no evidence to the contrary during the administrative hearing, and raised no objection to the VE's qualifications, and the ALJ relied upon the VE's unrebutted testimony based on the VE's experience, practice, having completed onsite job analyses for the specific jobs identified, and the DOT); *Shaibi*, 883 F.3d at 1110 (concluding the plaintiff forfeited claim because he "did not even obliquely suggest that the VE's job estimates might be unreliable at any point during administratively proceedings").

Given the foregoing, the Court finds that *Goode* is distinguishable and does not support Plaintiff's argument.   Moreover, the Court finds that the VE's testimony constitutes substantial evidence that supports the ALJ's step-five finding—that there are significant jobs in the national economy that Plaintiff can perform, and the undersigned recommends that the Commissioner's decision be affirmed on this basis.  *See, e.g., Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839-40 (11th Cir. 2012) (per curiam) (explaining the "Social Security regulations provide that an ALJ may rely on a VE's knowledge and expertise, and they do not require a VE [to] produce detailed reports or statistics in support of her testimony" and holding the VE's testimony constituted substantial evidence).

**D.      Whether the ALJ properly considered the Plaintiff's migraine impairment**

Plaintiff contends that the ALJ failed to properly consider Plaintiff's migraines and assess the limitation Plaintiff has due to this impairment.   The Commissioner counters that the objective medical findings do not indicate that Plaintiff's migraines were as

limiting as she alleged, and she has failed to prove that her migraines imposed additional limitations on her ability to work.

An ALJ is required to consider all the medically determinable impairments of which he is aware, including those which are not severe.  20 C.F.R. § 404.1545(a)(2). Plaintiff, however, concedes that an ALJ does not have to discuss every single piece of medical evidence in the record.  *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) ("there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"); *Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 808-09 (11th Cir. 2013) (per curiam) ("Despite [the claimant's] assertions to the contrary, the ALJ stated that he considered the record in its entirety, and he was not required to discuss every piece of evidence in denying her application for disability benefits." (citation omitted)).

Although the ALJ did not specifically discuss Plaintiff's migraines other than to state that Plaintiff suffers from "migraine complex" when summarizing the initial disability report and to state that "[s]he has migraines" when summarizing Plaintiff's hearing testimony, the ALJ did state that he carefully considered the "entire record" in assessing Plaintiff's RFC and "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" (Tr. 75-76).  *See Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 n.3 (11th Cir. 2010) (per curiam) (ALJ's statements that he considered "the entire record" and "all symptoms" indicate he considered all of claimant's impairments); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (per curiam) (a simple expression of the ALJ's consideration of the combination of impairments constitutes a

sufficient statement of such findings); *Prince v. Comm'r, Soc. Sec. Admin.*, 551 F. App'x 967, 971 (11th Cir. 2014) (per curiam) (finding no error in the ALJ's failure "to make detailed findings or explicitly discuss whether [the claimant's] impairments met or equaled [a Listing]" because the finding could be implied from the ALJ's discussion of relevant medical evidence).   Here, the Court finds that the objective evidence was carefully considered by the ALJ even though not specifically discussed.  *See Ingram v. Astrue*, No. 8:07-cv-1591-JDW-TBM, 2008 WL 2943287, at *5 (M.D. Fla. July 30, 2008) ("In light of the ALJ's repeated reference to these records, I am obliged to find that the objective evidence set forth therein was also considered by the ALJ even if not specifically mentioned.").  Moreover, the objective medical findings reflect successful treatment of her headaches (Tr. 551) and fail to indicate Plaintiff's migraines were as limiting as she alleged.  It is the functional limitations imposed by a condition, rather than the mere diagnosis of the condition, that determines disability.  *See McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality").  In fact, there are no findings in the record that Plaintiff had functional limitations due to her headaches. Because Plaintiff has failed to prove that her migraines imposed additional limitations on her ability to work, and the ALJ's decision reflects that he considered her migraines (Tr. 76), the Court cannot find any error in the ALJ's consideration or discussion of Plaintiff's migraines and recommends the ALJ's RFC assessment be affirmed.

**IV**.

Accordingly, for the foregoing reasons, it is hereby **RECOMMENDED**:

1.  The decision of the Commissioner be affirmed.

2.  The Clerk be directed to enter final judgment in favor of the Commissioner and close the case.

IT IS SO REPORTED in Tampa, Florida, on this 20th day of August 2021.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to the proposed findings and recommendations or request an extension of time to do so.  28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.  Failure of any party to timely object in accordance with the provisions of § 636(b)(1) waives that party's right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions contained in this Report and Recommendation.  11th Cir. R. 3-1.

cc:    Hon. William F. Jung