UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ISIS GONZALEZ RODRIGUEZ,

    Plaintiff,

v.                                              Case No.  8:20-cv-1232-WFJ-SPF

KILOLO KIJAKAZI,[1]
Acting Commissioner of the
Social Security Administration,

    Defendant.
_____/

## AMENDED REPORT AND RECOMMENDATION[2]

Plaintiff seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits ("DIB").  As the Administrative Law Judge's ("ALJ") decision did not employ the proper legal standards under *Viverette v. Commissioner of Social*

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021 and is substituted as Defendant in this suit pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

[2] On September 20, 2021, the district judge adopted the undersigned's original Report and Recommendation (Doc. 26), affirmed the Commissioner's decision, and entered judgment for the Commissioner (*see* Docs. 29, 30).  The next day, the Eleventh Circuit published *Viverette v. Commissioner of Social Security*, 13 F.4th 1309 (11th Cir. 2021), which reversed the lower court's decision and found there is an apparent conflict between a residual functional capacity ("RFC") limitation to simple, routine, and repetitive tasks and jobs with a General Educational Development ("GED") reasoning level of three that the ALJ should have addressed under *Washington v. Commissioner of Social Security*, 906 F.3d 1353 (11th Cir. 2018).  As *Viverette* addressed arguments Plaintiff raised in this case, the district judge withdrew his Order affirming the Commissioner's decision and the Judgment in the Commissioner's favor and directed the parties to submit supplemental briefs (Doc. 31).  The parties did so (Docs. 32, 33).  Now, at the district judge's request, the undersigned amends the previous Report and Recommendation to account for *Viverette* and the parties' supplemental briefing (Doc. 26).

*Security*, 13 F.4th 1309 (11th Cir. 2021), the undersigned recommends the Commissioner's decision be reversed and the case remanded for further administrative proceedings.

## I.

### A.   Procedural Background

Plaintiff filed an application for a period of disability and DIB (Tr. 71). The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 71). Plaintiff then requested an administrative hearing (Tr. 249-250). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 120-153). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 68-84). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B.   Factual Background and the ALJ's Decision

Plaintiff, who was born in 1978, claimed disability beginning January 5, 2017 (Tr. 309). Plaintiff obtained at least a high school education (Tr. 83). Plaintiff's past relevant work experience included teacher aide, family counselor, housekeeper cleaner, warehouse worker, and corrections officer (Tr. 82-83). Plaintiff alleged disability due to depression, anxiety, immune system disease, Hashimoto's thyroiditis, back condition (spondylosis and sclerosis), migraine complex, mini stroke, asthma, neuropathic pain (fibromyalgia) mutation factor 2 and 3, and adrenal deficiency (Tr. 76, 343).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through March 31, 2022 and had not engaged in substantial gainful activity since January 5, 2017, the alleged onset date (Tr. 73). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: degenerative joint disease – bilateral knees; degenerative disc disease – lumbar; asthma; thyroid disorder; obesity; anxiety disorder; and major depressive disorder (Tr. 73). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 74). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except can no more than occasionally stoop, kneel, crouch, crawl, and balance; can no more than occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; should not work around heavy respiratory irritants or hazards, such as open moving machinery or unprotected heights; can understand, remember, and carry out simple instructions; can maintain persistence for simple tasks; should not work with the general public; should not be required to interact with co-workers and supervisors on more than an occasional basis, and these interactions should be superficial and work-related (Tr. 75-76). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the

intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 80).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform her past relevant work (Tr. 82-83). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a lens inserter, stone setter, and weight tester (Tr. 84, 148). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 83-84).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §

4

404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 404.1520(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. See 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## III.

Plaintiff argues here that: (1) the ALJ erred in failing to include in the RFC assessment limitations due to moderate difficulties with adapting or managing oneself; (2) the ALJ erred in failing to discharge his duty to resolve the inconsistencies between the VE testimony and the DOT; (3) the ALJ's step five conclusion with regards to jobs available in the national economy was not supported by substantial evidence; and (4) the ALJ failed to properly consider Plaintiff's migraines and assess the limitation due to this impairment. The undersigned need not address all these arguments, because the ALJ did not resolve the apparent conflict between Plaintiff's RFC limitation to carrying out only simple instructions and the reasoning level three job of weight tester. As the ALJ did not apply the correct legal standards, the ALJ's decision is not supported by substantial evidence and remand is required.

A. **Whether the ALJ discharged his duty to resolve the inconsistencies between the VE testimony and the DOT**

The ALJ found that Plaintiff could perform the job of weight tester, which has a reasoning level of three (Tr. 84; Doc. 24, Ex. C at 4). Plaintiff argues there was an apparent inconsistency between the VE's testimony and the Dictionary of Occupational Titles' ("DOT")[3] findings regarding Plaintiff's limitation to "simple tasks" and jobs with reasoning level of three, which, per the DOT, require a claimant to "[d]eal with problems involving several concrete variables." *See* DOT § 539.485-010, 1991 WL 674890 (weight tester, reasoning level 3). Plaintiff contends that the ALJ, despite his affirmative obligation to do so, did not identify or resolve the inconsistency in his decision. Considering *Viverette*, 13 F.4th 1309, the Court agrees.

An ALJ has an affirmative obligation to identify and resolve "apparent conflicts" between the VE testimony and the DOT, otherwise the ALJ's decision is not supported by substantial evidence. *Washington*, 906 F.3d at 1362; *see* Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704.[4] This means it is not enough for the ALJ to simply ask the VE

---

[3] "The DOT is an extensive compendium of data about the various jobs that exist in the United States economy, and includes information about the nature of each type of job and what skills or abilities they require." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d at 1357 n.2.

[4] SSR 00-4p explains:
> When vocational evidence provided by a VE or [vocational specialist ("VS")] is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

2000 WL 1898704, at *4.

7

if there is an apparent conflict; the ALJ must make a "meaningful investigatory effort" to identify or uncover any *apparent* conflicts, explain, and resolve them. *Washington*, 906 F.3d at 1364 (emphasis added). The court in *Washington* goes on to explain "apparent" means that conflict is "reasonably ascertainable or evident" and "seemingly real or true, but not necessarily so." *Id.* at 1366 (citation omitted).

In *Viverette*, 13 F.4th at 1317, the Eleventh Circuit recently held there is an apparent conflict between an RFC limitation to simple, routine, and repetitive tasks and jobs with level three reasoning that the ALJ must address and explain under *Washington,* 906 F.3d 1353. Here, the ALJ clearly erred by failing to resolve the conflict as it related to the reasoning level three job of weight tester (70,000 jobs nationally). But the VE testified that Plaintiff could perform two other positions (lens inserter and stone setter), both of which have a reasoning level of one, and that there are 188,000 lens setter jobs and 96,000 stone setter jobs in the national economy. (Tr. 83-84, 148; *see* DOT § 713.687-026, 1991 WL 679273 (lens inserter, reasoning level 1); DOT § 735.687-034, 1991 WL 679985 (stone setter, reasoning level 1)). Consequently, the issue becomes whether the ALJ's error was harmless. The undersigned concludes it was not.

The *Viverette* panel set forth three reasons for being unable to "conclude that the ALJ's failure to address the apparent conflict as to the [level three job] was harmless." 13 F.4th at 1318. First, quoting *Washington*, the panel stated it "can't disregard the error—the failure to address the apparent conflict—on the grounds that no conflict of fact existed." *Id.* (internal quotes omitted). In other words, the court could not resolve the apparent conflict for the ALJ. This equally applies to our case.

8

Second, the ALJ must ascertain whether the jobs the claimant can perform exist in significant numbers in the national economy. In *Viverette*, the apparent conflict eliminated over 80 percent of the jobs the VE presented to the ALJ. And the ALJ "apparently treated the three occupations (one of which we must here assume is off the table) cumulatively for purposes of the 'significant numbers' determination, for she did not make any findings about how many jobs were available in the national economy for each of the occupations." *Id.* In other words, in *Viverette*, the ALJ did not make a finding about how many of the reasoning level one jobs of final assembler and check weigher were available in the national economy or whether they separately or cumulatively constituted a significant number without the reasoning level three job. Here, this reasoning applies. Although apparent conflict eliminated less than 20 percent of the jobs, and the ALJ did determine how many of reasoning level one jobs of lens setter (188,000 jobs) and stone setter (96,000 jobs) existed in the national economy, the ALJ did not make a specific finding as to whether the combined 284,000 jobs constituted "significant numbers" in the national economy.

Third, because the VE testimony as to the number of remaining reasons level one jobs (about 21,000) was based on the Standard Occupation Classification (SOC) system, which does not have a one-to-one match to DOT occupations, the *Viverette* panel stated it was "hesitant to make any factual determination ourselves." *Id.* Standing alone this reasoning does not support remand in this case. Unlike in *Viverette*, the claimant here did not question the VE's methodology for calculating the jobs numbers or challenge the reliability of the VE's testimony during the hearing, and there is no argument or indication

9

that the VE calculated job numbers using data from the wrong SOC code related to a DOT occupation. (*See* Tr. 149-51). But, considering that the first two reasons the Eleventh Circuit identified in *Viverette* for being "unable to conclude that the ALJ's failure to address the apparent conflict as to the [level three job] was harmless," are present here, the undersigned recommends remand.

**IV**.

Accordingly, for the foregoing reasons, it is hereby **RECOMMENDED**:

1.  The Commissioner's decision be reversed and the case remanded to the Commissioner for further administrative proceedings; and

2.  The Clerk be directed to enter final judgment in Plaintiff's favor and close the case.

IT IS SO REPORTED in Tampa, Florida, on this 2nd day of November 2021.

_____
SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to the proposed findings and recommendations or request an extension of time to do so. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. Failure of any party to timely object in accordance with the provisions

of § 636(b)(1) waives that party's right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions contained in this Report and Recommendation.  11th Cir. R. 3-1.


cc:     Hon. William F. Jung